HUMANITARIAN LAW PROJECT,
et al., Plaintiffs

v.

Alberto GONZALES, et al., Defendants.

Nos. CV98–1971ABCRCX,
CV03–6107ABCRCX.

United States District Court,
C.D. California,
Western Division.

July 25, 2005.

Carol Sobel, Santa Monica, CA, Paul Hoffman, Venice, CA, Visuvanathan Rudrakumaran, New York, NY, David Cole, Georgetown University Law Center, Center for Constitutional Rights, Washington, D.C., Nancy Chang, Shayana Devendra Kadidal, Center for Constitutional Rights, New York, NY, for Plaintiffs.

Dilan Esper, Los Angeles, CA, David Anderson, John Tyler, Peter Keisler, Sandra Schraibman, Martha Rubio, Department of Justice, Washington, D.C., Ann Beeson, Jameel Jaffer, Melissa Goodman, American Civil Liberties Union Foundation, New York, NY, for Defendants.

## ORDER RE: PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

COLLINS, District Judge.

This action involves a challenge to portions of the Antiterrorism and Effective Death Penalty Act and the Intelligence Reform and Terrorism Prevention Act. Specifically, the parties seek summary judgment regarding the constitutionality of the prohibition on providing material support or resources, including "training," "expert advice or assistance," "personnel," and "service," to designated foreign terrorist organizations.

The Humanitarian Law Project, Ralph Fertig, Ilankai Thamil Sangam, Dr. Nagalingam Jeyalingam, World Tamil Coordinating Committee, Federation of Tamil Sangams of North America, and Tamil Welfare and Human Rights Committee (collectively, "Plaintiffs") desire to provide support for the lawful activities of two organizations that have been designated as foreign terrorist organizations. Plaintiffs seek summary judgment and an injunction to prohibit the enforcement of the criminal ban on providing material support to such organizations. Alberto Gonzales (in his official capacity as United States Attorney General), the United States Department of Justice, Condoleeza Rice (in her official capacity as Secretary of the Department of State), and the United States Department of State (collectively, "Defendants") bring a motion to dismiss and cross-motion for summary judgment. After considering the parties' submissions, the arguments of counsel, and the case file, the Court hereby DENIES Defendants' motion to dismiss and GRANTS IN PART and DENIES IN PART the parties' cross-motions for summary judgment.

## I. FACTUAL BACKGROUND

The background of this case is well known to the parties and to the Court and need not be recited at length here. Plaintiffs are five organizations and two United States citizens seeking to provide support to the lawful, nonviolent activities of the Partiya Karkeran Kurdistan (Kurdistan Workers' Party) ("PKK") and the Liberation Tigers of Tamil Eelam ("LTTE"). The PKK and the LTTE have been designated as foreign terrorist organizations.

The PKK is a political organization representing the interests of the Kurds in Turkey, with the goal of achieving self-determination for the Kurds in Southeastern Turkey. Plaintiffs allege that the Turkish government has subjected the Kurds to human rights abuses and discrimination for decades. The PKK's efforts on behalf of the Kurds include political organizing and advocacy, providing social services and humanitarian aid to Kurdish refugees, and engaging in military combat with Turkish armed forces.

Plaintiffs wish to support the PKK's lawful and nonviolent activities towards achieving self-determination. Specifically, Plaintiffs seek to provide training in the use of humanitarian and international law for the peaceful resolution of disputes, engage in political advocacy on behalf of the Kurds living in Turkey, and teach the PKK how to petition for relief before representative bodies like the United Nations.

The LTTE represents the interests of Tamils in Sri Lanka, with the goal of achieving self-determination for the Tamil residents of Tamil Eelam in the Northern

and Eastern provinces of Sri Lanka. Plaintiffs allege that the Tamils constitute an ethnic group that has for decades been subjected to human rights abuses and discriminatory treatment by the Sinhalese, who have governed Sri Lanka since the nation gained its independence in 1948. The LTTE's activities include political organizing and advocacy, providing social services and humanitarian aid, defending the Tamil people from human rights abuses, and using military force against the government of Sri Lanka.

Plaintiffs wish to support the LTTE's lawful and nonviolent activities towards furthering the human rights and well-being of Tamils in Sri Lanka. In particular, Plaintiffs emphasize the desperately increased need for aid following the tsunamis that devastated the Sri Lanka region in December 2004, especially in Tamil areas along the Northeast Coast. Plaintiffs seek to provide training in the presentation of claims to mediators and international bodies for tsunami-related aid, offer legal expertise in negotiating peace agreements between the LTTE and the Sri Lankan government, and engage in political advocacy on behalf of Tamils living in Sri Lanka.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (the "AEDPA") proscribing all material support and resources to designated foreign terrorist organizations in the interests of law enforcement and national security. Specifically, the AEDPA sought to prevent the United States from becoming a base for terrorist fundraising. Congress recognized that terrorist groups are often structured to include political or humanitarian components in addition to terrorist components. Such an organizational structure allows terrorist groups to raise funds under the guise of political or humanitarian causes. Those funds can then be diverted to terrorist activities.

Following the September 11, 2001 terrorist attacks on the World Trade Center Twin Towers in New York, Congress enacted the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (the "USA PATRIOT Act") and the Intelligence Reform and Terrorism Prevention Act (the "IRTPA") in 2001 and 2004, respectively, to further its goal of eliminating material support or resources to foreign terrorist organizations. The USA PATRIOT Act and the IRTPA amended the AEDPA.

While Plaintiffs are committed to providing the above-mentioned support, they fear doing so would expose them to criminal prosecution under the AEDPA for providing material support and resources to foreign terrorist organizations. Accordingly, Plaintiffs challenge the portion of the AEDPA, as amended by the IRTPA, providing as follows:

> Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life.

18 U.S.C. § 2339B(a).

The AEDPA, as amended by the USA PATRIOT Act and the IRTPA, defines "material support or resources" as:

> any property, tangible or intangible, or *service*, including currency or monetary instruments or financial securities, financial services, lodging, *training, expert advice or assistance*, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, *personnel* (1 or more individuals who may be or include oneself), and trans-

portation, except medicine or religious materials.

18 U.S.C. § 2339A(b)(1) (emphasis added).

## II. PROCEDURAL BACKGROUND

The procedural history of the cases before the Court is somewhat complex.

### A. Case No. 98–1971

Plaintiffs first filed a complaint on March 19, 1998 in Case No. 98–1971, in which they alleged that the AEDPA violated the First and Fifth Amendments. Specifically, Plaintiffs sought a preliminary injunction barring the enforcement of the AEDPA against them for three reasons: (1) the AEDPA's prohibition on providing material support to foreign terrorist organizations violated the First Amendment rights of freedom of speech and association; (2) the AEDPA unconstitutionally granted the Secretary of State unfettered discretion to designate disfavored organizations as foreign terrorist organizations; and (3) the terms "training" and "personnel" were impermissibly vague under the Fifth Amendment. The Court rejected most of Plaintiffs' arguments, instead finding that the AEDPA neither violated the First Amendment nor allowed the Secretary of State unfettered discretion to blacklist organizations. However, the Court agreed in part with Plaintiffs' arguments regarding vagueness and, therefore, preliminarily enjoined the prosecution of Plaintiffs and their members under the AEDPA's prohibition on providing "training" and "personnel" to foreign terrorist organizations. *See Humanitarian Law Project v. Reno,* 9 F.Supp.2d 1176 (C.D.Cal.1998) (*"District Court–HLP I"*).

On March 3, 2000, the Ninth Circuit affirmed this Court's order. *See Humanitarian Law Project v. Reno,* 205 F.3d 1130 (9th Cir.2000) (*"HLP I"*). In response, this Court issued a permanent injunction on October 2, 2001, which the Ninth Circuit upheld on December 3, 2003. *See*

*Humanitarian Law Project v. United States Department of Justice,* 352 F.3d 382 (9th Cir.2003) (*"HLP II"*), *vacated,* 393 F.3d 902 (9th Cir.2004). In addition to upholding this Court's conclusion that "training" and "personnel" are impermissibly vague, the Ninth Circuit's ruling in *HLP II* construed the AEDPA to require that the donor of material support have knowledge that the recipient either had been designated as a foreign terrorist organization or engaged in terrorist activities. Subsequently, the Ninth Circuit voted to rehear the three-judge panel's ruling in *HLP II en banc. See Humanitarian Law Project v. United States Department of State,* 382 F.3d 1154 (9th Cir.2004).

However, on December 17, 2004, three days after oral argument before the *en banc* panel, Congress enacted the IRTPA, amending the terms "training," "personnel," "expert advice or assistance" and adding the term "service" to the definition of "material support or resources" to designated terrorist organizations. *See* 18 U.S.C. §§ 2339A(b); 2339B(h). The IRTPA also clarified a *mens rea* requirement that the donor know that the foreign terrorist organization has been designated as a foreign terrorist organization or has engaged in terrorist activities. Accordingly, the AEDPA, as amended by the IRTPA, now states: "To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization, that the organization has engaged or engages in terrorist activity, or that the organization has engaged or engages in terrorism...." 18 U.S.C. § 2339B (internal citations omitted).

Subsequently, on December 21, 2004, the Ninth Circuit *en banc* panel declined to decide *HLP II* in light of Congress's amendment of the terms at issue and adoption of a *mens rea* requirement. However, the Ninth Circuit affirmed this

Court's October 2, 2001 order holding the terms "training" and "personnel" impermissibly vague for the reasons set forth in *HLP I. See Humanitarian Law Project v. United States Department of State*, 393 F.3d 902 (9th Cir.2004). The Ninth Circuit also vacated its order in *HLP II*, in which it had previously construed the AEDPA to require knowledge that a recipient organization was either a foreign terrorist organization or had engaged in terrorist activities. The Ninth Circuit then remanded the case to this Court for further proceedings. *See id.*

### B. Case No. 03–6107

On October 31, 2001, Congress enacted the USA PATRIOT Act, amending the AEDPA to add "expert advice or assistance" to the definition of "material support or resources" to designated terrorist organizations. *See* 18 U.S.C. §§ 2339A(b); 2339B(g)(4). Plaintiffs filed a second complaint in this Court on August 27, 2003, in Case No. 03–6107, in which they alleged that the prohibition on providing "expert advice and assistance" violated the First and Fifth Amendments. On March 17, 2004, this Court again rejected most of Plaintiffs' arguments. However, the Court enjoined Defendants from enforcing the "expert advice or assistance" provision against Plaintiffs, finding the term "expert advice or assistance," like "training" and "personnel," to be impermissibly vague. *See Humanitarian Law Project v. Ashcroft*, 309 F.Supp.2d 1185 (C.D.Cal.2004) (*"District Court–HLP II"*). Thereafter, the parties cross-appealed this Court's ruling to the Ninth Circuit. In view of the IRTPA amendments, the Ninth Circuit subsequently remanded the case to this Court to allow it to be heard with the earlier case.

### C. Consolidation of Case No. 98–1971 and Case No. 03–6107

The two cases filed by Plaintiffs (the first construing "training" and "personnel" and the second construing "expert advice or assistance") were consolidated in this Court, and the parties agreed to an extended briefing schedule on the instant cross-motions. On May 16, 2005, Plaintiffs filed the instant motion for summary judgment. Defendants filed their opposition to Plaintiffs' motion for summary judgment on July 8, 2005.[1] Defendants also filed a motion to dismiss and cross-motion for summary judgment on July 8, 2005. The parties filed replies in support of their respective cross-motions on July 18, 2005 and July 20, 2005. On July 25, 2005, Defendants submitted a supplemental brief without the Court's permission regarding the vagueness challenge. Oral argument was heard on July 25, 2005.

## III. LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Justiciability

A motion to dismiss will be denied unless it appears that the plaintiff can prove no set of facts that would entitle him or her to relief. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir.1997). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

Standing is a threshold requirement in every federal case. *See Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "As an aspect of justiciability, the standing question is whether the plaintiff has alleged such a personal

---

1. Defendants' opposition was originally due on June 10, 2005. Due to extenuating circumstances, the Court granted Defendants an extension of time to file their opposition on July 8, 2005.

stake in the controversy as to warrant his invocation of federal court jurisdiction." *MAI Sys. Corp. v. UIPS,* 856 F.Supp. 538, 540 (N.D.Cal.1994) (citation omitted). Article III standing consists of "three separate but interrelated components": "(1) a distinct and palpable injury to the plaintiff; (2) a fairly traceable causal connection between the injury and challenged conduct; and (3) a substantial likelihood that the relief requested will prevent or redress the injury." *Id.* (citing *McMichael v. County of Napa,* 709 F.2d 1268, 1269 (9th Cir. 1983)).

## B. Motion for Summary Judgment

Summary judgment shall be granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [its] own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party discharges its burden by showing that the nonmoving party has not disclosed the existence of any "significant probative evidence tending to support the complaint." *First Natal Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). The Court views the inferences drawn from the facts in the light most favorable to the party opposing the motion. *See T.W. Elec.*

*Serv., Inc. v. Pacific Elec. Contractor's Ass'n,* 809 F.2d 626, 631 (9th Cir.1987).

When the parties file cross-motions for summary judgment, the district court must consider all of the evidence submitted in support of both motions to evaluate whether a genuine issue of material fact exists precluding summary judgment for either party. *See Fair Housing Council of Riverside County, Inc. v. Riverside Two,* 249 F.3d 1132, 1135 (9th Cir.2001).

## IV. DISCUSSION

### A. Defendants' Motion to Dismiss

Defendants move to dismiss Plaintiffs' challenge to the terms "training," "expert advice or assistance," "personnel," and "service" "for lack of justiciability". According to Defendants, Plaintiffs lack standing to bring a vagueness challenge under the Fifth Amendment for two reasons: (1) Plaintiffs rely on speculative hypotheticals inapplicable to their own conduct; and (2) Plaintiffs conflate vagueness under the First and Fifth Amendments. Plaintiffs oppose Defendants' motion, arguing that their claims are justiciable under both the First and Fifth Amendments because they face a credible threat of prosecution for their own intended activities. The Court finds that Defendants' motion to dismiss for lack of justiciability must be DENIED.

"To satisfy the Article III case or controversy requirement, [a plaintiff] must establish, among other things, that it has suffered a constitutionally cognizable injury-in-fact." *California Pro–Life Council, Inc. v. Getman,* 328 F.3d 1088, 1093 (9th Cir.2003). "[N]either the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." *Thomas v. Anchorage Equal Rights Commission,* 220 F.3d 1134, 1139 (9th Cir.2000)(*en banc*). Instead, there must be a "genuine threat

of imminent prosecution." *Id.* "In evaluating the genuineness of a claimed threat of prosecution, [the Ninth Circuit considers] whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and the history of past prosecution or enforcement under the challenged statute." *Id.*

■ Plaintiffs have identified more than a hypothetical intent to violate the law. In fact, Plaintiffs have provided services in the past specifically to the PKK and the LTTE and would do so again if the fear of criminal prosecution were removed. Plaintiffs' desire to provide services is heightened by the December 2004 tsunamis that impacted the Sri Lankan coast. Further, Defendants' contention that Plaintiffs lack standing to attack the AED-

PA for vagueness based on mere hypothetical situations ignores the evidence that Plaintiffs submitted regarding their intended activities. Plaintiffs do not seek injunctive relief as to hypothetical activities, but as to their own.[2]

Finally, Defendants do not contest that Plaintiffs face a threat of prosecution or that the challenged statute has been enforced in the past. Plaintiffs' intended activities arguably fall within the statute's reach, and the government has been active in its enforcement of the AEDPA. Therefore, the Court finds that Plaintiffs have sufficiently established standing to assert a vagueness challenge.[3]

## B. The Parties' Cross–Motions for Summary Judgment

Plaintiffs move for summary judgment on three grounds: (1) the prohibition on providing material support or resources to

**2.** Defendants' reliance on *Hill v. Colorado*, 530 U.S. 703, 733, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) as support that courts may not consider hypothetical situations in void for vagueness challenges is misplaced. In *Hill*, the Supreme Court declined to entertain hypotheticals after it had already found that the "the likelihood that anyone would not understand any of those common words [in the statute] seems quite remote." *Hill*, 530 U.S. at 733, 120 S.Ct. 2480. In contrast, the statutory language regarding the ban on "training," "expert advice or assistance," "personnel," and "service" is more ambiguous and complex.

**3.** The Court also rejects Defendants' argument regarding the conflation of vagueness under the First and Fifth Amendments. Citing *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), Defendants contend that a statute must be vague in all applications in order to be held unconstitutionally vague under the Fifth Amendment. According to Defendants, Plaintiffs conflate vagueness and overbreadth by asserting vagueness as applied to the hypothetical conduct of others instead of Plaintiffs' own intended activities. The Supreme Court rejected this argument in *Kolender v. Lawson*, 461 U.S. 352,

103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). Specifically, the Supreme Court stated, "First, it neglects the fact that we permit a facial challenge if a law reaches 'a substantial amount of constitutionally protected conduct.' Second, where a statute imposes criminal penalties, the standard of certainty is higher. This concern has, at times, led us to invalidate a criminal statute on its face even when it could conceivably have had some valid application ..." *Kolender*, 461 U.S. at 358 n. 8, 103 S.Ct. 1855 (citations omitted). The Supreme Court noted that "we have traditionally viewed vagueness and overbreadth as logically related and similar doctrines." *Id.* The Supreme Court further distinguished *Parker* as a case involving military regulation. *See id.* Accordingly, the Court rejects Defendants' argument that Plaintiffs' First Amendment concerns are limited to a First Amendment overbreadth attack and cannot be raised in the context of a Fifth Amendment vagueness challenge. As discussed below, Plaintiffs' Fifth Amendment vagueness challenge is intertwined with their First Amendment concerns. The legal standards applied to a vagueness challenge and an overbreadth challenge, however, differ. Accordingly, the Court addresses Plaintiffs' vagueness and overbreadth arguments separately below.

foreign terrorist organizations without requiring a showing of specific intent to further the organization's unlawful terrorist activities violates due process under the Fifth Amendment; (2) the prohibitions on "training," "expert advice or assistance," "personnel," and "service," as amended by the IRTPA, are impermissibly vague under the Fifth Amendment; and (3) the provision exempting prosecution for providing material support to a foreign terrorist organization that has been approved by the Secretary of State is an unconstitutional licensing scheme under the First Amendment.

Defendants, in turn, seek summary judgment on three grounds: (1) the AEDPA, as amended by the IRTPA, is consistent with Congressional intent, and its *mens rea* requirement is constitutionally sufficient under the Fifth Amendment; (2) the terms "training," "expert advice or assistance," "personnel," and "service" are neither vague nor overbroad under the First and Fifth Amendments in relation to Plaintiffs' own conduct; and (3) the IRTPA amendments do not grant the government unconstitutional licensing authority.

After considering the arguments, the Court finds that the parties' cross-motions for summary judgment must be GRANTED IN PART and DENIED IN PART as follows: (1) the prohibition on providing material support to foreign terrorist organizations without requiring a showing of specific intent to further the organization's unlawful terrorist activities does not violate due process under the Fifth Amendment; (2) the terms "training," "expert advice or assistance," and "service" are impermissibly vague; (3) the term "personnel" is not impermissibly vague; (4) the prohibitions on providing "training," "expert advice or assistance," "personnel," and "service" are not overbroad; and (5) the exemption from prosecution for providing material support that has been approved by the Secretary of State is not an unconstitutional licensing scheme under the First Amendment. The Court addresses each of these issues in turn below.

### 1. The Prohibition on Providing Material Support or Resources Does Not Violate the Fifth Amendment.

■ Citing *Scales v. United States*, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961), Plaintiffs argue that the AEDPA's prohibition on providing material support or resources to foreign terrorist organizations violates due process under the Fifth Amendment. Specifically, Plaintiffs contend that the prohibition imposes vicarious criminal liability without requiring proof of specific intent to further the terrorist activities of foreign terrorist organizations. Plaintiffs, therefore, urge the Court to read a specific intent *mens rea* requirement into 18 U.S.C. § 2339B in order to avoid Fifth Amendment due process concerns.

Defendants, in contrast, assert that the AEDPA does not impose vicarious criminal liability, but instead prohibits only the conduct of giving material support or resources to foreign terrorist organizations. Moreover, Defendants point to Congressional intent regarding the *mens rea* required and Congress's wide latitude to legislate in the foreign affairs arena. Defendants also contend that the Ninth Circuit previously rejected the specific intent argument in *HLP II*. Finally, Defendants note that the IRTPA amendment requiring that a donor know that the recipient of the material support is a foreign terrorist organization adequately addresses Plaintiffs' concerns regarding specific intent.

As further explained below, the Court finds that the AEDPA does not violate due process under the Fifth Amendment and, therefore, declines to read a specific intent requirement into the statute. First, *Scales* is inapposite, as the holding there

turned on specific facts not present here. Second, the clear and unambiguous Congressional intent to exclude a specific intent requirement precludes a judicial interpretation of a specific intent element. Finally, the statute's current requirement that a donor know that the recipient of material support is a foreign terrorist organization eliminates any Fifth Amendment due process concerns.

### a. *Scales* Is Distinguishable from This Case.

Plaintiffs rely primarily on *Scales v. United States,* 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961), a Communist Party membership case, to support their argument that the AEDPA violates due process under the Fifth Amendment. *Scales* involved a Fifth Amendment challenge to a conviction under the Smith Act, which prohibited membership in a group advocating the overthrow of the government by force or violence, with punishment by fine or imprisonment for up to twenty years. *See Scales,* 367 U.S. at 206 n. 1, 81 S.Ct. 1469; 18 U.S.C. § 2385. The defendant contended that the Smith Act violated the Fifth Amendment because it unconstitutionally imputed guilt based on associational membership rather than concrete criminal conduct. The Supreme Court agreed that "[i]n our jurisprudence guilt is personal" and that "[m]embership, without more, in an organization engaged in illegal advocacy" was insufficient to satisfy personal

guilt. *Id.* at 224–25, 81 S.Ct. 1469. Nevertheless, the Supreme Court upheld the conviction because the defendant was not merely a member of the Communist Party, but had committed concrete acts with a specific intent to further the organization's illegal activities. *Id.* at 226–27, 81 S.Ct. 1469.

Plaintiffs attempt to stretch the *Scales* holding regarding the Smith Act into a general rule that specific intent is always constitutionally required. However, *Scales* was not so broad, but focused specifically on the Smith Act's criminal prohibition on *membership* in certain organizations, including the Communist Party. Indeed, membership itself was an element of the offense. While *Scales* discussed the concept of personal guilt in relation to "status or conduct," a close reading of *Scales* reveals that at heart, it was concerned with criminalizing associational membership in violation of the First Amendment.[4] By requiring specific intent in addition to actual membership, the Supreme Court sought to "prevent[ ] a conviction on what otherwise might be regarded as merely an expression of sympathy with the alleged criminal enterprise, unaccompanied by any significant action in its support or any commitment to undertake such action." *Scales,* 367 U.S. at 228, 81 S.Ct. 1469. In contrast, the AEDPA does not criminalize mere membership, association, or expressions of sympathy with foreign terrorist organizations.[5]

---

**4.** In addition to *Scales,* Plaintiffs also cite two Ninth Circuit cases from the same era regarding Communist Party membership: *Hellman v. United States,* 298 F.2d 810 (9th Cir.1961) and *Brown v. United States,* 334 F.2d 488 (9th Cir.1964). As with *Scales, Hellman* and *Brown* are distinguishable from the instant case because they involved imputed guilt based on Communist Party membership without further proof of active conduct or intent to overthrow the government.

**5.** Both the Ninth Circuit and this Court have rejected Plaintiffs' First Amendment associational challenges to the AEDPA's criminalization of material support to foreign terrorist organizations. *See HLP I,* 205 F.3d at 1134 ("We therefore do not agree ... that the First Amendment requires the government to demonstrate a specific intent to aid an organization's illegal activities before attaching liability to the donation of funds."); *District Court–HLP I,* 9 F.Supp.2d at 1191 ("AEDPA does not criminalize *mere* association with designated terrorist organizations by prohibiting

Instead, the AEDPA permits membership and affiliation with foreign terrorist organizations, but prohibits the conduct of providing material support or resources to an organization that one knows is a designated foreign terrorist organization or is engaged in terrorist activities.

### b. Clear Congressional Intent Precludes a Judicial Reading of Specific Intent Into the AEDPA.

Plaintiffs urge the Court to read an additional *mens rea* requirement into 18 U.S.C. § 2339B to require the government to prove that a donor specifically intended to further the terrorist activities of the foreign terrorist organization.[6] Plaintiffs cite three cases in which the Supreme Court read a *mens rea* requirement into federal criminal statutes, namely, *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), *Staples v. United States*, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), and *U.S. v. X–Citement Video, Inc.*, 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994). As explained below, none of these cases warrants a judicial interpretation that would contravene the clear Congressional intent to dispense with a specific intent requirement.

In *Liparota*, the Supreme Court interpreted a federal statute criminalizing the acquisition or possession of food stamps in any unauthorized manner to include a *mens rea* requirement that a defendant must know that he or she acquired or possessed food stamps in an unauthorized manner. In doing so, the Supreme Court noted that Congress has the power to de-

fine the elements of a federal statutory crime: "The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Liparota*, 471 U.S. at 424, 105 S.Ct. 2084. Finding, however, that the legislative history of the statute was silent as to a *mens rea* requirement and that criminal statutes without *mens rea* are " 'generally disfavored,' " the Court concluded that it was proper to read a *mens rea* element into the statute. *Id.* at 425–26, 105 S.Ct. 2084 (quoting *United States v. Gypsum Co.*, 438 U.S. 422, 438, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978)). In so concluding, the Supreme Court noted that its result would likely have been different if Congress had intended to omit a *mens rea* element to the offense:

> Of course, Congress *could* have intended that this broad range of conduct be made illegal, perhaps with the understanding that prosecutors would exercise their discretion to avoid such harsh results. However, given the paucity of material suggesting that Congress did so intend, we are reluctant to adopt such a sweeping interpretation.

*Id.* at 427, 105 S.Ct. 2084. Thus, the Court unequivocally recognized that Congress, as the creator of federal crimes, has the power to dispense with *mens rea*, even when doing so would criminalize a broad range of conduct.

Subsequently, in *Staples*, the Supreme Court interpreted the National Firearms Act, which criminalizes the possession of an unregistered firearm by up to ten years

---

the provision of material support regardless of the donor's intent ....."). As previously noted, Plaintiffs remain free to affiliate with and advocate on behalf of foreign terrorist organizations.

**6.** The AEDPA, as amended by the IRTPA, currently reads, "To violate this paragraph, a

person must have knowledge that the organization is a designated terrorist organization, that the organization has engaged or engages in terrorist activity, or that the organization has engaged or engages in terrorism...." 18 U.S.C. § 2339B (internal citations omitted).

imprisonment, to have a *mens rea* element. *See* 26 U.S.C. § 5861(d). Specifically, the Supreme Court held that a defendant must know that the gun he or she possesses is actually a firearm in order to be convicted. *See Staples*, 511 U.S. at 619, 114 S.Ct. 1793. In construing a *mens rea* requirement, the Court drew on statutory construction and legislative intent, reiterating that "[w]e have long recognized that determining the mental state required for commission of a federal crime requires 'construction of the statute and ... inference of the intent of Congress.'" *Id.*, at 605, 114 S.Ct. 1793 (quoting *United States v. Balint*, 258 U.S. 250, 253, 42 S.Ct. 301, 66 L.Ed. 604 (1922)). As that section of the National Firearms Act was silent as to scienter, the Supreme Court construed the statute to include *mens rea*, noting that the statute's harsh penalties further supported such a reading. However, the Supreme Court emphasized that its holding was "a narrow one," dependent on the lack of Congressional intent in that case to dispense with *mens rea*. *Staples*, 511 U.S. at 619, 114 S.Ct. 1793. Moreover, the Supreme Court again reiterated that Congress had the authority to eliminate a mens rea requirement: "[I]f Congress thinks it necessary to reduce the Government's burden at trial to ensure proper enforcement of the Act, it remains free to amend § 5861(d) by explicitly eliminating a *mens rea* requirement." *Id.* at 616 n. 11, 114 S.Ct. 1793.

Several months later, in *X–Citement Video*, the Supreme Court interpreted the Protection of Children Against Sexual Exploitation Act, which prohibits the interstate transportation of visual depictions of minors engaged in sexually explicit conduct, to require that a defendant knew that the performers were minors. *See* 18 U.S.C. § 2252(a)(1)(A)-(2)(A). The Supreme Court noted that both the statutory construction and legislative history could support a scienter requirement, which would help justify the harsh penalties and avoid absurd applications of the statute.[7] *See X–Citement Video*, 513 U.S. at 69–72, 115 S.Ct. 464. In so concluding, the Supreme Court again acknowledged Congress's authority to craft statutes without a *mens rea* element, observing that courts may construe a *mens rea* requirement "*so long as* such a reading is not plainly contrary to the intent of Congress." *Id.* at 78, 115 S.Ct. 464 (emphasis added).

Accordingly, following *Liparota*, *Staples*, and *X–Citement Video*, the Court must analyze the statutory language and Congressional intent with respect to the AEDPA, as amended by the IRTPA.[8] The AEDPA's statutory language regarding the *mens rea* required is straightforward, namely, that a donor know that the recipient of the material support is a foreign terrorist organization or engages in terrorist activities. *See* 18 U.S.C. § 2339B.

With respect to legislative intent, moreover, Congress's intent regarding the level

---

**7.** The Court notes, however, that the Supreme Court has specifically stated that even absurd consequences resulting from an elimination of *mens rea* would not "justify judicial disregard of a clear command to that effect from Congress, but they do admonish us to caution in assuming that Congress, without clear expression, intends in any instance to do so." *Morissette v. United States*, 342 U.S. 246, 256 n. 14, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

**8.** The Court notes that the Supreme Court did not impose a specific intent requirement in

any of these cases. Instead, the Supreme Court construed a *mens rea* requiring that a defendant act with knowledge of the prohibited conduct. *See Liparota*, 471 U.S. 419, 105 S.Ct. 2084 (defendant must know that he or she acquired or possessed food stamps in an unauthorized manner), *Staples*, 511 U.S. 600, 114 S.Ct. 1793 (defendant must know that he or she possessed an unregistered firearm), and *X–Citement Video*, 513 U.S. 64, 115 S.Ct. 464 (defendant must know that the performers in sexually explicit videos were minors).

of *mens rea* required for violation of 18 U.S.C. § 2339B is clear and unambiguous. First, Congress enacted 18 U.S.C. § 2339B in 1996, only two years after it had enacted 18 U.S.C. § 2339A, which prohibits the provision of material support or resources "knowing or intending" that they be used for executing violent federal crimes. 18 U.S.C. § 2339A. While the statutory language of § 2339A includes an explicit *mens rea* requirement to further illegal activities, such a requirement is notably missing from the statutory language of § 2339B. Instead, § 2339B requires only that an individual knowingly provide material support or resources.[9] This Court must assume that Congress knows how to include a specific intent requirement when it so desires, as evidenced by § 2339A, and that Congress acted deliberately in excluding such an intent requirement in § 2339B.[10]

Second, the legislative history indicates that Congress enacted § 2339B in order to close a loophole left by § 2339A. Congress, concerned that terrorist organizations would raise funds "under the cloak of a humanitarian or charitable exercise," sought to pass legislation that would "severely restrict the ability of terrorist organizations to raise much needed funds for their terrorist acts within the United States." H.R. Rep. 104–383, at *43 (1995). As § 2339A was limited to donors intending to further the commission of specific federal offenses, Congress passed § 2339B

to encompass donors who acted without the intent to further federal crimes.

In fact, during Congressional hearings on the legislation, representatives from civil liberties, humanitarian, and religious organizations objected to the criminalization of all donations without regard to a donor's intent and a donee's humanitarian deeds. *See* "Civil Liberties Implications of H.R. 1710, the Comprehensive Antiterrorism Act of 1995 and Related Legislative Responses to Terrorism": Hearing before the United States House of Representatives Committee on the Judiciary, 104th Congress (1995) (statement of Gregory T. Nojeim of the American Civil Liberties Union); "The Comprehensive Antiterrorism Act of 1995 and Its Implications for Civil Liberties": Hearing before the House Committee on the Judiciary, 104th Congress (1995) (statement of Azizah Y. Al–Hibri, American Muslim Council); "The Comprehensive Antiterrorism Act of 1995 and Its Implications for Civil Liberties": Hearing before the House Committee on the Judiciary, 104th Congress (1995) (statement of Ehalil E. Jahshan, National Association of Arab Americans).[11]

Congress, however, rejected these objections in enacting § 2339B. In fact, it made a specific finding that "foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct."[12] AEDPA § 301(a)(7), 18 U.S.C. § 2339B note. Con-

---

**9.** As discussed below, Congress clarified in the IRTPA amendments that a donor must know that the recipient of the material support or resources is a foreign terrorist organization or engages in terrorist activities.

**10.** The Court notes that 18 U.S.C. § 2339C also included a specific intent requirement.

**11.** It is noteworthy that "the AEDPA's predecessor, the Violent Crime Control and Law Enforcement act of 1994, specifically excepted from 'material support,' 'humanitarian as-

sistance to persons not directly involved' in terrorist activities.... However, the government enacted the AEDPA and specifically deleted this exception permitting contributions for humanitarian assistance ...." *District Court–HLP I*, 9 F.Supp.2d at 1194 (citations omitted).

**12.** Plaintiffs argue that this finding is undercut by Congress's allowance of unlimited donations of medicine and religious items. But as the Ninth Circuit explained in *HLP I*, Congress is entitled to select what types of assis-

gress's concerns regarding the fungibility of money and resources have also been noted by the Ninth Circuit. *See HLP I,* 205 F.3d at 1136 ("More fundamentally, money is fungible; giving support intended to aid an organization's peaceful activities frees up resources that can be used for terrorist acts."). Moreover, the single sentence to which Plaintiffs cling—Senator Orrin Hatch's 1996 statement—is insufficient to negate Congress's subsequently enacted and amended clear intent.[13] This isolated statement does not justify a judicial reading of specific intent into the statute, particularly given that Senator Hatch subsequently supported the IRTPA without a specific intent provision.

Finally, Congress's 2004 IRTPA amendment underscores Congress's decision to dispense with any specific intent requirement. The 2004 IRTPA amendment clarified that the only *mens rea* required under § 2339B is that a donor know that the recipient is a foreign terrorist organization.[14] Notably, Congress passed the IRTPA in the aftermath of the Ninth Circuit's decision in *HLP II* and the Middle District

of Florida's contrasting decision in *United States v. Al–Arian,* 308 F.Supp.2d 1322 (M.D.Fla.2004) and *United States v. Al–Arian,* 329 F.Supp.2d 1294 (M.D.Fla.2004), (together, "*Al–Arian*"). As discussed above, the Ninth Circuit held in *HLP II* that the Fifth Amendment required the government to prove that a donor knew the recipient was either a foreign terrorist organization or engaged in terrorist activities. The Middle District of Florida held in *Al–Arian* that the Fifth Amendment required the government to prove that a donor not only knew the recipient was a foreign terrorist organization, but also that the donor specifically intended to further the terrorist activities of the foreign terrorist organization. This Court must assume that Congress, with full awareness of these decisions, incorporated the *HLP II* holding into the statute and rejected the *Al–Arian* ruling requiring specific intent. Therefore, the Court finds that an imposition of specific intent to further terrorist activities cannot be reconciled with Congress's clear intent in passing the AEDPA and the IRTPA.[15]

---

tance to allow and what types to prohibit. *See HLP I,* 205 F.3d at 1136 n. 4.

**13.** In introducing the Senate Conference Report to the Senate, Senator Hatch stated: "This bill also includes provisions making it a crime to knowingly provide material support to the terrorist functions of foreign groups designated by a Presidential finding to be engaged in terrorist activities." 142 Cong. Rec. S3354 (April 16, 1996)(statement of Sen. Hatch).

**14.** Plaintiffs previously asserted that the AEDPA was unconstitutional under the First Amendment because it prohibits donating material support even if the donor does not have the specific intent to aid in the recipient organization's unlawful activities. In rejecting Plaintiffs' specific intent argument under the First Amendment, the Ninth Circuit noted, "Material support given to a terrorist organization can be used to promote the organization's unlawful activities, regardless of donor intent. Once the support is given, the donor

has no control over how it is used." *HLP I,* 205 F.3d at 1134. *See also District Court–HLP I,* 9 F.Supp.2d at 1192.

**15.** This Court respectfully disagrees with the Middle District of Florida's decision in *Al–Arian.* In *Al–Arian,* the court engrafted a *mens rea* element into § 2339B, requiring that a donor of material support intend to further the terrorist activities of the foreign terrorist organization. The Middle District of Florida noted that courts should interpret statutes to avoid constitutional issues. The Court cited as examples the morally innocent cab driver or hotel clerk providing transportation or lodging, respectively, to a foreign terrorist organization member in New York City for a United Nations meeting. As discussed above, this Court finds that the legislative history of the statute and Congress's actions since the *Al–Arian* opinion reveal an unequivocal intent to exclude any *mens rea* requirement beyond the plain language of the statute, as amended by the IRTPA. Moreover, the circumstances

Based on Congress's recent IRTPA amendments, the Court believes that Congress would prefer to further amend the statute to cure any remaining vagueness problems rather than have a court impose a *mens rea* requirement that would eliminate the distinctions Congress purposely drew between § 2339B versus §§ 2339A and 2339C.[16] If, contrary to its findings and the legislative history of § 2339B, Congress did not, in fact, intend to dispense with a *mens rea* specific intent requirement, it remains free to amend the statute by explicitly requiring the additional element of specific intent. *See Staples*, 511 U.S. at 616 n. 11, 114 S.Ct. 1793.

### c. The *Mens Rea* Requirement in § 2339B Satisfies Any Due Process Concerns.

In any event, Congress's recent clarification of the *mens rea* required under § 2339B satisfies any due process issues under the Fifth Amendment. Significantly, the Ninth Circuit in *HLP II* did not extend its Fifth Amendment analysis of *Scales* to require that the government prove specific intent to further terrorist activities.[17] Rather, the Ninth Circuit held that it was sufficient to "avoid due process concerns" to require that the government "prove beyond a reasonable doubt that the accused knew that the organization was designated as a foreign terrorist organization or that the accused knew of the organization's unlawful activities that caused it to be so designated."[18] *HLP II*, 352 F.3d at 405. The AEDPA, as amended by the IRTPA, incorporates this reading of *mens rea* and prohibits the provision of material support to a recipient that the donor knows is a foreign terrorist organization.[19] Accordingly, Congress's clarification of the *mens rea* requirement satisfies the notion of personal guilt under the Due Process Clause because an offender must know that he or she was materially supporting a foreign terrorist organization.

### 2. The Prohibitions on "Training," "Expert Advice or Assistance," and "Service" Are Impermissibly Vague, but "Personnel" Is Permissible.

Plaintiffs argue that the IRTPA amendments of the terms "training," "expert ad-

---

of the hotel clerk and cab driver are not before this Court.

**16.** While the Court recognizes that courts often defer to the political branches in the foreign affairs context, the Court also notes that its decision does not rest on that ground. Even in legislation affecting foreign affairs, the judiciary must, of course, balance constitutional rights with governmental interests. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004).

**17.** As already noted above, *HLP II* was vacated by the Ninth Circuit after Congress enacted the IRTPA.

**18.** Moreover, the Ninth Circuit read the statement by Senator Hatch upon which Plaintiffs rely as supportive of this level of *mens rea*. *See HLP II*, 352 F.3d at 402 (citing 142 Cong. Rec. S3354 (daily ed. April 16, 1996) (statement of Sen. Hatch)).

**19.** While *Al–Arian* interpreted § 2339B to have two elements of personal guilt, namely, knowledge of the recipient's status as a foreign terrorist organization and intent to further the organization's terrorist activities, the Court notes that the statute can also be read as having a single element of personal guilt. For instance, in *X–Citement Video*, the Supreme Court held that "the age of the performers is the crucial element separating legal innocence from wrongful conduct," as sexually explicit videos featuring adults would not be prohibited. *X–Citement Video*, 513 U.S. at 73, 115 S.Ct. 464. Here, the status of the recipient organization is the crucial element separating legal innocence from wrongful conduct, as the provision of material support to non-foreign terrorist organizations would not be prohibited by the AEDPA.

vice or assistance," and "personnel" fail to cure the vagueness concerns identified in *HLP I, District Court–HLP I*, and *District Court–HLP II*. Plaintiffs allege that, in fact, the IRTPA amendments exacerbate the vagueness concerns.[20] Moreover, Plaintiffs contend that Congress added another vague term, "service," to the statute. Defendants respond that the terms "training," "expert advice or assistance," "personnel," and "service" are clear and straightforward.[21]

A challenge to a statute based on vagueness grounds requires the court to consider whether the statute is "sufficiently clear so as not to cause persons 'of common intelligence ... necessarily [to] guess at its meaning and [to] differ as to its application.'" *United States v. Wunsch*, 84 F.3d 1110, 1119 (9th Cir.1996) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). Vague statutes are void for three reasons: "(1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on 'arbitrary and discriminatory enforcement' by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir.1998) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)).

"[P]erhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). "The requirement of clarity is enhanced when criminal sanctions are at issue or when the statute abuts upon sensitive areas of basic First Amendment freedoms." *Information Providers' Coalition for the Defense of the First Amendment v. FCC*, 928 F.2d 866, 874 (9th Cir.1991) (internal quotation marks and citations omitted). Thus, under the Due Process Clause, a criminal statute is void for vagueness if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954). A criminal statute must therefore "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited ...." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

■ After considering the arguments, the Court finds that the terms "training," "expert advice or assistance," and "service" are impermissibly vague under the Fifth Amendment. With respect to the term "personnel," the Court finds that the IRTPA amendment to "personnel" sufficiently cures the previous vagueness con-

---

**20.** The 2004 IRTPA amendment also states that "[n]othing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment...." 18 U.S.C. § 2339B(i). Plaintiffs assert that such "boilerplate language" is superfluous and fails to eliminate constitutional concerns. The Court agrees, and Defendants do not contest, that this provision is inadequate to cure potential vagueness issues because it does not clarify the prohibited con-

duct with sufficient definiteness for ordinary people.

**21.** As discussed above, Defendants' contention that Plaintiffs lack standing to attack the AEDPA for vagueness based on mere hypothetical situations ignores Plaintiffs' submitted evidence of their intended conduct. Plaintiffs do not seek injunctive relief as to hypothetical activities, but as to their own.

cerns. The Court addresses each of these terms separately below.

### a. "Training" Is Impermissibly Vague.

This Court previously concluded that "training," an undefined term, was impermissibly vague because it easily reached protected activities, such as teaching how to seek redress for human rights violations before the United Nations. *See District Court–HLP I*, 9 F.Supp.2d at 1204, *aff'd*, 205 F.3d 1130, 1138. The IRTPA amendment now defines "training" as "instruction or teaching designed to impart a specific skill, as opposed to general knowledge." 18 U.S.C. § 2339A(b)(2).

Plaintiffs contend that the amendment to "training" exacerbates the vagueness problem because Plaintiffs must now guess whether teaching international law, peacemaking, or lobbying constitutes a "specific skill" or "general knowledge." Defendants respond that training encompasses a broad range of conduct, ranging from flying lessons to training in the use of weapons.

The Court agrees with Plaintiffs that the IRTPA amendment to "training" (distinguishing between "specific skill" and "general knowledge") fails to cure the vagueness concerns that the Court previously identified. Even as amended, the term "training" is not sufficiently clear so that persons of ordinary intelligence can reasonably understand what conduct the statute prohibits. Moreover, the IRTPA amendment leaves the term "training" impermissibly vague because it easily encompasses protected speech and advocacy, such as teaching international law for peacemaking resolutions or how to petition the United Nations to seek redress for human rights violations.[22]

In fact, the Ninth Circuit indicated in *HLP I* that limiting "training" to the "imparting of skills" would be insufficient because such a definition would encompass protected speech and advocacy activities. The Ninth Circuit explained:

> Again, it is easy to imagine protected expression that falls within the bounds of this term. For example, a plaintiff who wishes to instruct members of a designated group on how to petition the United Nations to give aid to their group could plausibly decide that such protected expression falls within the scope of the term "training." The government insists that the term is best understood to forbid the imparting of skills to foreign terrorist organizations through training. Yet, presumably, this definition would encompass teaching international law to members of designated organizations. The result would be different if the term "training" were qualified to include only military training or training in terrorist activities.

*HLP I*, 205 F.3d at 1138.

"Training" implicates, and potentially chills, Plaintiffs' protected expressive activities and imposes criminal sanctions of up to fifteen years imprisonment without sufficiently defining the prohibited conduct for ordinary people to understand. Therefore, the Court finds that "training" fails to satisfy the enhanced requirement of clarity for statutes touching upon protected activities under the First Amendment or impos-

**22.** Defendants contend that the AEDPA prohibits Plaintiffs from providing "advice or training 'on how to engage in human rights advocacy on their own behalf and on how to use international law to seek redress for human rights violations.'" Defendants' Opposition at 16. This position is in direct contrast to the Ninth Circuit and this Court's holdings, which recognized that such activities are protected under the, First Amendment rights to free speech and association. *See HLP I*, 205 F.3d at 1137–38; *District Court–HLP I*, 9 F.Supp.2d at 1204; *District Court–HLP II*, 309 F.Supp.2d at 1200–01.

ing criminal sanctions. *See Information Providers' Coalition for the Defense of the First Amendment,* 928 F.2d at 874.

### b. "Expert Advice or Assistance" Is Impermissibly Vague.

■ The Court previously found "expert advice or assistance," an undefined term, to be impermissibly vague under the same analysis it applied to "training" and "personnel" because "expert advice or assistance" could be construed to include First Amendment protected activities. *See District Court–HLP II,* 309 F.Supp.2d at 1200–01 ("The 'expert advice or assistance' Plaintiffs seek to offer includes advocacy and associational activities protected by the First Amendment, which Defendants concede are not prohibited under the USA PATRIOT Act.").

The IRTPA amendments define "expert advice or assistance" as "scientific, technical, *or other specialized knowledge.*" 18 U.S.C. § 2339A(b)(3) (emphasis added). Plaintiffs contend that the "specialized knowledge" portion of this definition is vague because it merely repeats what an expert is and provides no additional clarity. Similar to their attack on the term "training," Plaintiffs assert that they must now guess whether their expert advice constitutes "specialized knowledge." Defendants argue that "expert advice or assistance" is not vague because the definition is derived from the established Federal Rules of Evidence regarding expert testimony.

The Court agrees with Plaintiffs that the IRTPA amendment to "expert advice

or assistance" (adding "specialized knowledge") does not cure the vagueness issues. Even as amended, the statute fails to identify the prohibited conduct in a manner that persons of ordinary intelligence can reasonably understand. Similar to the Court's discussion of "training" above, "expert advice or assistance" remains impermissibly vague because "specialized knowledge" includes the same protected activities that "training" covers, such as teaching international law for peacemaking resolutions or how to petition the United Nations to seek redress for human rights violations. Moreover, the Federal Rules of Evidence's inclusion of the phrase "scientific, technical, or other specialized knowledge" does not clarify the term "expert advice or assistance" for the average person with no background in law. Accordingly, the Court finds that the "expert advice or assistance" fails to provide fair notice of the prohibited conduct and is impermissibly vague.[23]

### c. "Service" Is Impermissibly Vague.

■ Plaintiffs attack the IRTPA's insertion of the undefined term "service" to the definition of "material support or resources" on vagueness grounds.[24] According to Plaintiffs, the prohibition on "service" is at least as sweeping as the prohibitions on "training," "expert advice or assistance," and "personnel," as each of these could be construed as services. Defendants concede that the term "service" is broad, but argue that it is a common term that the dictionary defines (among other definitions) as "an act done for the

---

**23.** Plaintiffs attack only the "specialized knowledge" portion of the definition of "expert advice or assistance" as vague. The Court's injunction of enforcement of this prohibition against Plaintiffs applies only to the "specialized knowledge" portion of the definition, not the "scientific, technical ... knowledge" portion of the definition, which the Court finds is not vague.

**24.** Plaintiffs did not file an amended complaint challenging the ban on "service," which was recently enacted in December 2004. In any event, the parties briefed the issue fully. In the interest of judicial economy, the Court deems the complaint amended so that these issues may be resolved together.

benefit or at the command of another" or "useful labor that does not produce a tangible commodity." Defendants' Opposition at 21. Plaintiffs reply that Defendants' own definition is vague and would infringe on all sorts of speech and advocacy done for the benefit of another that is clearly protected by the First Amendment.

In addition, Plaintiffs note that Defendants' argument that any activity done *"for the benefit of another"* would violate the ban on "services" contradicts Defendants' concession that Plaintiffs could freely engage in "human rights and political advocacy *on behalf of* the PKK and the Kurds before any forum of their choosing." Defendants' Opposition at 17 (emphasis added). Plaintiffs argue that this supposed distinction proves their point. In other words, "service" is impermissibly vague because it forces Plaintiffs to guess whether their human rights and political advocacy constitutes action taken "on behalf of another," which Defendants concede is protected action, or "for the benefit of another," which Defendants argue is prohibited.

The Court finds that the undefined term "service" in the IRTPA is impermissibly vague, as the statute defines "service" to include "training" or "expert advice or assistance," terms the Court has already ruled are vague. Like "training" and "expert advice or assistance," "it is easy to imagine protected expression that falls within the bounds of" the term "service." *HLP I*, 205 F.3d at 1137. Moreover, there is no readily apparent distinction between taking action "on behalf of another" and "for the benefit of another." Defendants' contradictory arguments on the scope of the prohibition only underscore the vagueness. As with "training" and "expert advice or assistance," the term "service" fails to meet the enhanced requirement of clarity for statutes affecting protected expres-

sive activities and imposing criminal sanctions.

#### d. "Personnel" Is Not Impermissibly Vague.

 The Court previously found personnel to be impermissibly vague because it "broadly encompasses the type of human resources which Plaintiffs seek to provide, including the distribution of LTTE literature and informational materials and working directly with PKK members at peace conferences and other meetings." *District Court-HLP I*, 9 F.Supp.2d at 1204. The Ninth Circuit affirmed, finding that the ban on personnel "blurs the line between protected expression and unprotected conduct," as an individual "who advocates the cause of the PKK could be seen as supplying them with personnel." *HLP I*, 205 F.3d at 1137.

The IRTPA amendment now limits prosecution for providing "personnel" to the provision of "one or more individuals" to a foreign terrorist organization "to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization." 18 U.S.C. § 2339B(h). Further, the statute states that "[i]ndividuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control." *Id.* Plaintiffs argue that the new language distinguishing between acting under an organization's "direction and control" and acting "independently" still impinges on protected activities. Defendants respond that the IRTPA amendments use clear terms that are readily understandable to persons of ordinary intelligence.

The Court finds that the IRTPA amendment sufficiently narrows the term "personnel" to provide fair notice of the prohibited conduct. Limiting the provision of

personnel to those working under the "direction or control" of a foreign terrorist organization or actually managing or supervising a foreign terrorist organization operation sufficiently identifies the prohibited conduct such that persons of ordinary intelligence can reasonably understand and avoid such conduct.

### 3. The Prohibitions on "Training," "Expert Advice or Assistance," "Personnel," and "Service" Are Not Substantially Overbroad.

■ Plaintiffs also contend that the prohibitions on "training," "expert advice or assistance," "personnel," and "service" are sweepingly overbroad because they proscribe a substantial amount of speech activity that is protected by the First Amendment.[25]

"The First Amendment doctrine of overbreadth is an exception to [the] normal rule regarding the standards for facial challenges." *Virginia v. Hicks,* 539 U.S. 113, 118, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003). Under the overbreadth doctrine, a "showing that a law punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep, suffices to invalidate *all* enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.' " *Id.* at 118–19, 123 S.Ct. 2191 (internal quotation marks and citations omitted).

However, the Supreme Court has recognized that "there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law—particularly a law that reflects 'legitimate

state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.' " *Hicks,* 539 U.S. at 119, 123 S.Ct. 2191 (citations omitted). Accordingly, the Supreme Court requires that the "law's application to protected speech be 'substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications before applying the 'strong medicine' of the overbreadth invalidation." *Id.*

This Court has previously rejected Plaintiffs' overbreadth arguments and sees no reason to revisit the issue, as the arguments remain the same. Plaintiffs have failed to establish that the prohibitions on "training," "personnel," "expert advice or assistance," and "service" are substantially overbroad, as the prohibitions are content-neutral and their purpose of deterring and punishing the provision of material support to foreign terrorist organizations is legitimate. Further, the statute's application to protected speech is not "substantial" both in an absolute sense and relative to the scope of the law's plainly legitimate applications. The Court, therefore, declines to apply the "strong medicine" of the overbreadth doctrine, finding instead that as-applied litigation will provide a sufficient safeguard for any potential First Amendment violation.

### 4. The IRTPA Does Not Impose an Unconstitutional Discretionary Licensing Scheme.

■ Plaintiffs' final argument in support of their motion for summary judgment is that the IRTPA exception to prosecution under 18 U.S.C. § 2339B(j) constitutes an unconstitutional licensing scheme.[26] The statutory exception provides:

---

**25.** Plaintiffs recognize that the Court has previously rejected their overbreadth argument in the past, but wish to preserve their right to appeal.

**26.** Having found that "personnel" and the "scientific, technical ... knowledge" portion of the ban on "expert advice or assistance"

No person may be prosecuted under this section in connection with the term "personnel," "training," or "expert advice or assistance" if the provision of that material support or resources to a foreign terrorist organization was approved by the Secretary of State with the concurrence of the Attorney General. The Secretary of State may not approve the provision of any material support that may be used to carry out terrorist activity.

18 U.S.C. § 2339B(j).

According to Plaintiffs, this provision grants the Secretary of State unfettered discretion to license speech because it targets those sections of 18 U.S.C. § 2339B(a) that concern expressive activity, namely, "training," "expert advice or assistance," and "personnel," and vests a government official with unbridled discretion to permit individuals to provide such support to foreign terrorist organizations. Plaintiffs rely on cases involving prior restraints to support their argument that 18 U.S.C. § 2339B(j) is an unconstitutional licensing scheme.

In *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), the Supreme Court struck down a licensing statute requiring permits from the mayor to place newspaper racks on public property because "in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *City of Lakewood*, 486 U.S. at 757, 108 S.Ct. 2138. Similarly, in *Forsyth County v. The Na-*

*tionalist Movement*, 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992), the Supreme Court invalidated an ordinance regarding assembly and parade permit fees as an overly broad prior restraint on public speech. In striking the ordinance, the Supreme Court noted that a licensing scheme must be narrowly tailored with reasonable and definite standards, and must not be content-based or delegate overly broad discretion to the issuing official. *See Forsyth County*, 505 U.S. at 130–33, 112 S.Ct. 2395. *See also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226–27, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (prior restraint must include a time limit within which government official must decide whether to issue a license).

Defendants respond that these cases do not apply to the instant case, as § 2339B(j) is not a prior restraint licensing scheme. While conceding that the *City of Lakewood* and *Forsyth* involved restrictions on speech pending a permit from a government official, Defendants maintain that § 2339B(j) imposes no restriction at all on Plaintiffs' activities. Rather, according to Defendants, the other sections of the AEDPA, as discussed earlier, prohibit Plaintiffs from providing material support or resources to foreign terrorist organizations. *See* 18 U.S.C. § 2339B(a).[27]

The Court finds that 18 U.S.C. § 2339B(j) does not impose an unconstitutional licensing scheme. In fact, § 2339B(j) operates as an *exception* to prosecution under § 2339B(a) for providing material support or resources as to "training," "expert advice or assistance,"

---

are not vague, the Court must address Plaintiffs' challenge to 18 U.S.C. § 2339B(j).

**27.** Furthermore, Defendants assert that Plaintiffs lack standing to bring this claim because they are not harmed by the exception set forth in 18 U.S.C. § 2339B(j). The Court agrees that Defendants have asserted a sound argument regarding standing. Plaintiffs have failed to articulate how they are injured by 18 U.S.C. § 2339B(j), as the prohibition on providing material support is set forth in another section of the AEDPA. Nevertheless, the Court addresses Plaintiffs' claim on the merits.

and "personnel." As this Court has previously held, the AEDPA's actual prohibition on providing material support is not directed to speech or advocacy in violation of the First Amendment. *See District Court–HLP I*, 9 F.Supp.2d at 1196–97, *aff'd*, 205 F.3d at 1135–36. Rather, Plaintiffs are restricted only from the conduct of providing material support to foreign terrorist organizations and remain free to exercise their First Amendment rights with no prior restraints. Accordingly, the *City of Lakewood* and *Forsyth* are inapplicable to this case.[28] The Court therefore DENIES Plaintiffs' motion for summary judgment on this basis, finding that Plaintiffs have failed to establish that 18 U.S.C. § 2339B(j) is an unconstitutional licensing scheme in violation of the First Amendment.

## V. CONCLUSION

The Court concludes that Plaintiffs have standing to raise vagueness challenges to the terms "training," "expert advice or assistance," "personnel," and "service." Therefore, Defendants' motion to dismiss for lack of standing is DENIED.

The parties' cross-motions for summary judgment are GRANTED IN PART and DENIED IN PART as follows:

1. The Court finds that the lack of a specific intent requirement to further the terrorist activities of foreign terrorist organizations in the AEDPA's prohibition on providing material support or resources to foreign terrorist organizations does not violate due process under the Fifth Amendment. The Court therefore GRANTS Defendants' motion and DENIES Plaintiffs' motion on this ground.

2. The Court finds that the AEDPA's prohibitions on material support or resources in the form of "training," "expert advice or assistance," "personnel," and "service" are not overbroad under the First Amendment. The Court therefore GRANTS Defendants' motion and DENIES Plaintiffs' motion on this ground.

3. The Court finds that the term "personnel" is not impermissibly vague under the Fifth Amendment. The Court therefore GRANTS Defendants' motion and DENIES Plaintiffs' motion on this ground.

4. The Court finds that the terms "training"; "expert advice or assistance" in the form of "specialized knowledge"; and "service" are impermissibly vague under the Fifth Amendment. The Court therefore GRANTS Plaintiffs' motion and DENIES Defendants' motion on this ground.

5. The Court finds that the IRTPA amendment prohibiting the prosecution of donors who received approval from the Secretary of State to provide material support or resources is not an unconstitutional licensing scheme under the First Amendment. The Court therefore GRANTS Defendants' motion and DENIES Plaintiffs' motion on this ground.

---

28. Moreover, the Court notes that even if the exception constituted a licensing scheme, there would be no unfettered discretion in its application. On the contrary, the Secretary of State cannot approve material support without determining that it will not be used for terrorist activity. This Court previously rejected Plaintiffs' challenges to the Secretary of State's discretion in designating foreign terrorist organizations, which requires a determination that an organization actually engages in terrorist activity. *See District Court–HLP I*, 9 F.Supp.2d at 1199–1200; *see also HLP I*, 205 F.3d at 1137 (affirming this Court's decision and noting that because "the regulation involves the conduct of foreign affairs, we owe the executive branch even more latitude than in the domestic context").

Accordingly, Defendants, their officers, agents, employees, and successors are EN-JOINED from enforcing 18 U.S.C. § 2339B's prohibition on providing "training"; "expert advice or assistance" in the form of "specialized knowledge"; or "service" to the PKK or the LTTE against any of the named Plaintiffs or their members.[29] The Court declines to grant a nationwide injunction.

**IT IS SO ORDERED.**

---

29. This Court's injunction does not enjoin enforcement of the remaining categories of material support or resources against Plaintiffs, namely, "property, tangible or intangible"; "currency or monetary instruments or financial securities"; "financial services"; "lodging"; "expert advice or assistance" in the form of "scientific or technical ... knowledge"; "safehouses"; "false documentation or identification"; "communications equipment"; "facilities"; "weapons"; "lethal substances"; "explosives"; "personnel (1 or more individuals who may be or include oneself)"; and "transportation."