UNITED STATES of America

v.

Tarik IBN Osman SHAH, a/k/a "Tarik Shah," a/k/a "Tarik Jenkins," a/k/a "Abu Musab," Rafiq Sabir a/k/a "the Doctor," and Mahmud Faruq Brent, a/k/a "Mahmud Al Mutazzim," Defendants.

No. S405CR.673(LAP).

United States District Court, S.D. New York.

Jan. 30, 2007.

Jennifer Gillum Rodgers, Lead Attorney, Victor L. Hou, Lead Attorney, U.S. Attorney's Office SDNY (St. Andw's), Karl N. Metzner, U.S. Attorney's Office, SDNY, New York City, for USA, Plaintiff.

Erika McDaniel Edwards, Lead Attorney, Donaldson, Chilliest & McDaniel, LLP, Joshua Lewis Dratel, Lead Attorney, Law Offices of Joshua L. Dratel, P.C., Celia Amy Cohen, Michael Sangyun Kim, Kobre & Kim LLP, New York City, for Tarik Ibn Osman Shah (1), also known as "Tarik Shah," (1), also known as "Tarik

Jenkinss," (1), also known as "Abu Mus-ab," (1), Defendant.

Edward David Wilford, Lead Attorney, Khurrum Basir Wahid, Lead Attornry, Wahid Vizcaino & Maher, LLP New York City, Martin R. Stlar, Lead Attorney, Law Office of Jeffrey S. Rubin, Law Office of Jeffrey S. Rubin, Huntington, NY, Natali J.H. Todd, Lead Attorney, Law Offices of Natali J.H. Todd, P.C., Brooklyn, NY, for Rafiq Sabir (2), also known as "the Doctor," (2), Defendant.

Donald Joseph Yannella, III, Lead Attorney, Donald Yannella P.C., New York City, Hassen Ibn Abdellah, Lead Attorney, Hassen Ibn Abdellah, Elizabeth, NJ, for Mahmud Faruq Brent (3), also known as Mahmud Al Mutazzim (3), Defendant.

Henry J. Steinglass, Lead Attorney, Law Office of Jeffrey S. Rubin, Huntington, NY, Michael Oliver Hueston, Lead Attorney, Michael Hueston, Attorney at Law, New York City, for Abdulrahman Farhane (4), also known as "Abderr Farhan," (4), Defendant.

## OPINION AND ORDER

PRESKA, District Judge.

Defendant Rafiq Sabir ("Sabir") is charged as part of a four-count fourth superseding indictment (the "Indictment") with conspiring to provide, and providing and attempting to provide, "material support or resources" to al Qaeda, in the form of "medical support to wounded jihadists," in violation of 18 U.S.C. § 2339B (" § 2339B"). At conferences held on October 30, 2006 and January 17, 2007, the Court heard oral argument on, *inter alia,* Sabir's motion to dismiss the Indictment on the ground that it is unconstitutional to prosecute a doctor under § 2339B for pro-

viding medical services.[1] The Court denied the motion at the January 17 conference. Because the issue appears to be one of first impression, this written decision follows.

### BACKGROUND

A. *Indictment*

The Indictment, which was returned by a Grand Jury on December 6, 2006, charges the three remaining defendants in four counts. Sabir is charged in Counts One and Two. Count One charges a conspiracy to violate § 2339B as follows:

> From at least in or about October 2003, up to and including in or about May 2005, in the Southern District of New York and elsewhere, TARIK IBN OSMAN SHAH, a/k/a "Tarik Shah," a/k/a "Tarik Jenkins," a/k/a "Abu Musab," and RAFIQ SABIR, a/k/a "the Doctor," the defendants, and others known and unknown, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other, to provide material support or resources, namely personnel, training, and expert advice and assistance, as those terms are defined in Title 18, United States Code, Sections 2339A and 2339B, to a foreign terrorist organization, namely, al Qaeda, which was designated by the Secretary of State as a foreign terrorist organization on October 8, 1999, pursuant to Section 219 of the Immigration and Nationality Act, and was redesignated as such on or about October 5, 2001, and October 2, 2003, to wit, the defendants knowingly agreed to provide (i) one or more individuals (including themselves) to work under al Qaeda's direction and control and to organize,

---

1. Sabir and his co-defendants made several other arguments in support of their motions to dismiss the six-count third superseding indictment. The Court rejected these arguments for the reasons stated on the record in open court on October 30, 2006 and/or they were mooted by the Government's filing of the Indictment.

manage, supervise, and otherwise direct the operation of al Qaeda, (ii) instruction and teaching designed to impart a special skill to further the illegal objectives of al Qaeda, and (iii) advice and assistance derived from scientific, technical, and other specialized knowledge to further the illegal objectives of al Qaeda, to wit, TARIK IBN OSMAN SHAH, a/k/a "Tarik Shah," a/k/a "Tarik Jenkins," a/k/a "Abu Musab," agreed to provide martial arts training and instruction for jihadists, and RAFIQ SABIR, a/k/a "the Doctor," agreed to provide medical support to wounded jihadists, knowing that al Qaeda has engaged and engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), and that al Qaeda has engaged and engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

> (Title 18, United States Code, Section 2339B.)

(Ind.¶ 1).[2]

Count Two charges a substantive violation of § 2339B as follows:

> From at least in or about October 2003, up to and including in or about May 2005, in the Southern District of New York and elsewhere, TARIK IBN OSMAN SHAH, a/k/a "Tarik Shah," a/k/a "Tarik Jenkins," a/k/a "Abu Musab," and RAFIQ SABIR, a/k/a "the Doctor," the defendants, unlawfully and knowingly provided, and attempted to provide, material support or resources, namely personnel, training, and expert advice and assistance, as those terms are defined in Title 18, United States Code, Sections 2339A and 2339B, to a foreign terrorist organization, namely, al Qaeda, which was designated by the Secretary of State as a foreign terrorist organization on October 8, 1999, pursuant to Section

219 of the Immigration and Nationality Act, and was redesignated as such on or about October 5, 2001, and October 2, 2003, to wit, the defendants knowingly provided, and attempted to provide, (i) one or more individuals (including themselves) to work under al Qaeda's direction and control and to organize, manage, supervise, and otherwise direct the operation of al Qaeda, (ii) instruction and teaching designed to impart a special skill to further the illegal objectives of al Qaeda, and (iii) advice and assistance derived from scientific, technical, and other specialized knowledge to further the illegal objectives of al Qaeda, to wit, TARIK IBN OSMAN SHAH, a/k/a "Tarik Shah," a/k/a "Tarik Jenkins," a/k/a "Abu Musab," provided and attempted to provide martial arts training and instruction for jihadists, and RAFIQ SABIR, a/k/a "the Doctor," provided and attempted to provide medical support to wounded jihadists, knowing that al Qaeda has engaged and engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), and that al Qaeda has engaged and engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

> (Title 18, United States Code, Section 2339B.)

Ind. ¶ 2.

**B.** *Providing Material Support or Resources to Designated Foreign Terrorist Organizations*

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act. Pub.L. No. 104–132, 110 Stat. 1214. The Act included a new substantive prohibition against the provision of material support or resources to designated foreign terror-

---

**2.** "Ind." refers to the Indictment filed by the Government on Dec. 6, 2006 [dkt. no. 89].

ist organizations. *Id.* § 303(a), 110 Stat. at 1250–53 (codified at § 2339B). As amended, it is unlawful to engage in the following conduct:

> Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 15 years, or both, and, if the death of any person results, shall be imprisoned for any terms of years or for life.

§ 2339B(a)(1).

" '[M]aterial support or resources' has the same meaning given that term in section 2339A (including the definitions of 'training' and 'expert advice or assistance' in that section)." § 2339B(g)(4). Section 2339A (" § 2339A") is an anti-terrorism law enacted by Congress in 1994 as part of the Violent Crime Control and Law Enforcement Act. Pub.L. No. 103–322, Title XII, § 120005(a), 108 Stat. 1796, 2022 (codified as amended at 18 U.S.C. § 2339A(a)). The term "material support or resources" was originally defined as constituting:

> currency or other financial securities, financial services, lodging, training, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, but does not include humanitarian assistance to persons not directly involved in such violations.

*Id.* In 1996, Congress amended the definition of "material support or resources" to replace the phrase "but does not include humanitarian assistance to persons not directly involved in such violations" with the phrase "except medicine or religious materials." Pub.L. No. 104–132, Title III, § 323, 110 Stat. 1214, 1255. Congress intended the term "medicine" to "be understood to be limited to the medicine itself,

and does not include the vast array of medical supplies." H.R. Rep. 104–518, at 114 (1996), *as reprinted in* 1996 U.S.C.C.A.N. 944, 947.

In December 2004, Congress passed the Intelligence Reform and Terrorism Prevention Act (the "IRTPA"). Pub.L. No. 108–458, 118 Stat. 3638. The IRTPA included amendments to § 2339B, several of which bear on Sabir's challenge to the statute. First, the IRTPA added "expert advice or assistance" as a type of "material support or resource" and defined it to mean "advice or assistance derived from scientific, technical, or other specified knowledge." *Id.* § 6603(b), 118 Stat. at 3762 (codified at § 2339A(b)(3)). Second, the IRTPA defined "personnel," which was previously undefined, to mean the provision of "[one] or more individuals (who may be or include himself) to work under [a foreign] terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization." *Id.* § 6603(f), 118 Stat. at 3763 (codified at § 2339B(h)). In defining "personnel," Congress excluded from its scope "[i]ndividuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives...." *Id.* Finally, the IRTPA clarified the degree of knowledge required to violate § 2339B as follows: "To violate [§ 2339B(a)(1)], a person must have knowledge that the organization is a designated terrorist organization ... that the organization has engaged or engages in terrorist activity ..., or that the organization has engaged or engages in terrorism." *Id.* § 6603(c), 118 Stat. at 3762–63 (codified at § 2339B(a)(1)).

## DISCUSSION

Sabir contends that the Indictment is unconstitutional and should be dismissed because § 2339B deprives him of his right

to practice medicine. (*See* Sabir Mem. at 5).[3] Specifically, Sabir asserts that § 2339B "does not sufficiently identify the prohibited conduct so that [Sabir] in his profession and practice as a medical doctor, could know, what if any of his conduct as it relates to the practice of medicine would violate the statute." (*Id.* at 6). The source of the vagueness, according to Sabir, is that § 2339B excludes "medicine" from the itemized list of the types of "material support or resources" defined in § 2339A(b)(1), and the plain language definition of a doctor is someone who is qualified or licensed to practice medicine. (*Id.* at 6, 8). In other words, according to Sabir, "medicine" is inextricably intertwined with "doctor" and, thus, he had no way of knowing in advance what conduct would subject him to prosecution under § 2339B.

## A. *Legal Standard*

▇▇ The Fifth Amendment to the Constitution of the United States guarantees that "[n]o person shall ... be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. "The vagueness doctrine is a component of the right to due process." *Farrell v. Burke,* 449 F.3d 470, 485 (2d Cir.2006). A statute can run afoul of the vagueness doctrine on two grounds. "First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado,* 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). Accordingly, the Court must determine whether the statute gives adequate notice of its criminal prohibition and whether it creates a threat of arbitrary law enforcement. *See Farrell,* 449 F.3d at 485.

▇▇ Before examining whether § 2339B is unconstitutionally vague to third parties in the abstract, the Court must determine whether the statute is unconstitutionally vague as applied to Sabir's alleged conduct. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). If the Court entertains a facial vagueness challenge, it must determine whether the challenged statute "reaches a substantial amount of constitutionally protected conduct." *Kolender v. Lawson,* 461 U.S. 352, 358 n. 8, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

## B. *Application to § 2339B*

The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Thus, the Court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC, v. United States,* 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004).

▇▇ An analysis of the statutory text in question demonstrates that Sabir's reliance on the exclusion of the term "medicine" from the itemized list of the types of "material support or resources" is misplaced. In § 2339B, Congress chose to exclude from prosecution persons who provide "medicine" to a designated foreign terrorist organization knowing that said organization engages in terrorism or terrorist activity. However, Congress did not exclude from prosecution persons who provide "medical support" to such organizations with that knowledge.

---

**3.** "Sabir Mem." refers to Point I of the Memorandum of Law in Support of Pretrial Mo-

tions for Defendant Rafiq Sabir, filed July 17, 2006.

Sabir contends that the Court should not draw this distinction because "medicine to the plain and ordinary person means the provision of medical services." (Transcript of Oral Argument, dated October 30, 2006 ("Oct. 30, 2006 Tr."), at 64/8–9; *see also* Transcript of Oral Argument, dated January 17, 2007 ("Jan. 17, 2007 Tr."), at 26/23–27/21 (Edward Wilford, counsel for Sabir: "How do you differentiate the giving of medicine from what medicine is[?]"); *id.* at 28/13–23 (Mr. Wilford: "It says 'medicine.' I've taken the broader step of including medical services, because it's our position you can't separate out medical services from medicine. Medicine in a vacuum means nothing.")). Sabir's argument is erroneous because it completely overlooks, and is inconsistent with, the statute's carefully calibrated reach based on the detailed definitions of, among other terms, "expert advice or assistance" and "personnel." [4] *See Dolan v. United States Postal Serv.,* 546 U.S. 481, 126 S.Ct. 1252, 1257, 163 L.Ed.2d 1079 (2006) ("The definition of words in isolation ... is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis."); *Robinson v. Shell Oil Co.,* 519

U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").

The definitions of "expert advice or assistance" and "personnel" do not specifically exempt doctors from their coverage. *Cf. United States v. Sattar,* 314 F.Supp.2d 279, 299 (S.D.N.Y.2004) *("Sattar II")* (rejecting a similar argument made by an attorney being prosecuted for violating § 2339A: "[Lynne] Stewart argues that even if the terms of § 2339A literally reach the conduct charged, it should not cover the conduct of lawyers.... But there is nothing in the text of the statute, indeed in any source, that indicates that lawyers are exempt from the coverage of this statute."). Moreover, any reasonable doctor would be on notice from the plain language of the statute that conspiring to provide, or providing or attempting to provide, "medical support to wounded jihadists" under the direction and control of al Qaeda, knowing that al Qaeda engages in terrorism or terrorist activity, would constitute the provision of "expert advice or assistance"—"advice or assistance derived from scientific, technical, or other specified knowledge" (§ 2339A(b)(3))—and "personnel"—"[one] or more individuals (who may be or include himself) to work under [a foreign] terrorist organization's direction or control" (§ 2339B(h)).[5]

---

**4.** Even if the Court were to look beyond the plain language of the statute, it is clear that Congress intended for the exclusion of "medicine" to be a limited one. (*See supra* at 6). Moreover, any contrary interpretation would violate the overarching Congressional purpose behind § 2339B, which has been widely recognized as being enacted to fill a perceived law enforcement gap left open under § 2339A. *See, e.g., United States v. Paracha,* No. 03 Cr. 1197, 2006 WL 12768, at *28 (S.D.N.Y. Jan. 3, 2006) ("Section 2339B enacted two years after section 2339A—plainly excludes the explicit *mens rea* requirement to

further illegal activities, and the legislative history indicates that this exclusion was purposeful.").

**5.** To the extent Sabir's vagueness challenge is based in part on the definitions of "expert advice or assistance" and "personnel," that argument is without merit. With regard to "expert advice or assistance," it is beyond credulity to think that an ordinary doctor would not consider himself to possess "scientific, technical, or other specified knowledge" because he is a member of a profession whose required years of education and training is

§ 2339B does not deprive Sabir the right to practice medicine. It is not beyond the power of Congress to prohibit the provision of medical services by a doctor working under the control or direction of a terrorist organization. *Cf. Sattar II*, 314 F.Supp.2d at 302 ("Lawyers ... are not immune from criminal liability arising out of offenses committed while representing clients, and indeed defense counsel conceded at argument that lawyers have no license to violate generally applicable criminal laws."). To the extent Sabir contends that Congress should not distinguish between a "doctor" and "medicine," that is not an argument for this forum. (*See* Jan. 17, 2007 Tr. at 32/8–20 (Mr. Wilford:

"How do you separate a doctor from medicine? The Court: They just did. Congress is entitled to do that. Mr. Wilford: But Congress can be wrong. The Court: Oh, that's not my job. Mr. Wilford: Yes, it is. The Court: Congress, Congress writes the statutes. If you and I think that they're stupid, ill-conceived, anything like that, and that Congress is wrong, that's not our job here. Mr. Wilford: Your Honor, I used 'wrong' colloquially. If the statute is unconstitutional, that's where the Court comes in.")).

Sabir is not charged merely for being a doctor or for performing medical services. Here, Sabir is alleged essentially to have volunteered as a medic for the al Qaeda

---

unparalleled in society. Moreover, the only decision holding that this term is vague, *Humanitarian Law Project v. Gonzales*, 380 F.Supp.2d 1134, 1151 (C.D.Cal.2005) (*"HLP"*), did so in an entirely different context. *HLP* is distinguishable because that district court's concern with whether "teaching international law for peacemaking resolutions or how to petition the United Nations to seek redress for human rights violations" would result in future criminal prosecution is simply not present here. *Id.* With regard to "personnel," that term is not vague regardless of which version is applicable. Sabir failed to contest the Government's assertion that the amended definition applies here because the Indictment charges him with conspiring to provide, and providing or attempting to provide, "material support or resources" as recently as May 2005. (*See* Government's Memorandum of Law in Opposition to Defendants' Pretrial Motions, filed September 12, 2006, at 21–22). Even if the Court applied the prior, undefined, version of "personnel," that term is not vague here. The decision in *United States v. Lindh*, 212 F.Supp.2d 541, 573–74 (E.D.Va.2002) is persuasive. In that case, a vagueness challenge was rejected to the prior, undefined, version of "personnel" where the defendant was charged with joining al Qaeda, among other designated foreign terrorist organizations, to take up arms against American forces in Afghanistan in the fall/winter of 2001. *Id.* at 572 ("Simply put, the term 'personnel' does not extend to independent actors. Rather, it describes employees or employee-like operatives who serve the

[designated foreign terrorist organization] and work at its command or ... who provide themselves to serve the organization."); *see also United States v. Goba*, 220 F.Supp.2d 182, 194 (W.D.N.Y.2002) (rejecting defendants' attack on the § 2339B charge against them based on the purported vagueness of the prior, undefined, version of "personnel" because "one can be found to have 'provided material support or resources to a [designated] foreign terrorist organization' by offering one's services to said organization and allowing one's self to be indoctrinated and trained as a 'resource' in that organization's beliefs and activities"); *HLP*, 380 F.Supp.2d at 1152–53 (*holding that the amended definition of "personnel" is not vague because it "provide[s] fair notice of the prohibited conduct" by "[l]imiting the provision of personnel to those working under the 'direction or control' of a foreign terrorist organization...."*). The decision in *United States v. Sattar*, 272 F.Supp.2d 348, 358–59 (S.D.N.Y.2003) (*"Sattar I"*), which dismissed § 2339B charges in an indictment based on the vagueness of the definition of "personnel," was decided before Congress amended that definition expressly to define the term in December 2004. In addition, the decision in *Sattar I* was based in part on the fact that the charges in that case did not involve "hard core" conduct permitting the defendant to know full well in advance that such conduct would run afoul of § 2339B. *Id.* That was not the case in *Lindh*, nor is it the case here.

military, offering to make himself available specifically to attend to the wounds of injured fighters. Much as a military force needs weapons, ammunition, trucks, food, and shelter, it needs medical personnel to tend to its wounded. Thus, applied to the conduct alleged against Sabir in the Indictment, § 2339B is not unconstitutionally vague.

At oral argument, counsel for Sabir posited two hypotheticals in support of the assertion that the statute is unconstitutionally vague. The Court treats these examples as part of Sabir's assertion that § 2339B is facially vague. First, counsel for Sabir contended that a doctor who happens to treat a wounded person while working at a hospital when the person is brought in for treatment, and it later turns out that the person was a jihadist, would be subject to prosecution, under the Government's view of § 2339B. (*See* Oct. 30, 2006 Tr. at 50/10–15, 52/6–9, 53/19–54/2, 61/1–9). Second, counsel for Sabir asserted that a non-governmental organization ("NGO") which provided medical services, such as "Doctors Without Borders/Médicins Sans Frontières," would be subject to prosecution, under the Government's view of § 2339B. (*Id.* at 60/17–21, 63/6–8).

These hypotheticals are without merit because in both examples a reasonable doctor would understand that he could not be subject to prosecution under § 2339B. Neither the doctor in the first hypothetical who treats a terrorist by random chance, nor the doctor for the NGO in the second hypothetical who treats a terrorist in connection with an NGO's work, is acting under the "direction or control" of a designated foreign terrorist organization knowing that said organization engages in terrorism or terrorist activity. To the contrary, the doctors in these hypotheticals would constitute "[i]ndividuals … act[ing] entirely independently of [a] for-

eign terrorist organization" and would not be "considered to be working under [a] foreign terrorist organization's direction and control." § 2339B(h). Accordingly, the Government represented that the doctors in these hypotheticals would not be prosecuted under § 2339B. (*See* Oct. 30, 2006 Tr. at 65/21–66–2 (Statement of Karl Metzner, Assistant United States Attorney: "[T]he concern about Doctors Without Borders and all that is ill-founded because of the definition of personnel. The government is required to prove that Dr. Sabir worked or agreed to work under the terrorist organization's direction or control before he can be convicted under this statute. That eliminates the nongovernmental organizations and others who provide assistance on their own.")).

■ For the reasons explained above, Sabir has failed to demonstrate that § 2339B reaches any, let alone a substantial amount of, constitutionally protected conduct. *See United States v. Marzook*, 383 F.Supp.2d 1056, 1066 (N.D.Ill.2005) (rejecting a facial vagueness challenge to a § 2339B charge based on the definition of "personnel": "[T]here likely are many instances, like those described in the grand jury charge here [against the defendant for recruiting an individual to join Hamas, a designated foreign terrorist organization, and directing that individual to scout specific locations in Israel for possible attacks by Hamas], that involve 'easily identifiable and constitutionally proscribable conduct.'") (citation omitted); *cf. United States v. Assi*, 414 F.Supp.2d 707, 719 (E.D.Mich.2006) (rejecting a facial vagueness challenge to a § 2339B charge based on the definition of "weapons": "Because the statute is sufficiently specific concerning the sort of conduct set forth in the indictment in this case, it simply does not matter, for present purposes, whether § 2339B threatens to reach other, perhaps, more humanitarian forms of assistance.").[6]

---

**6.** To the extent Sabir contends that the Indict-

ment should be dismissed because § 2339B is

Thus, the Court concludes that § 2339B is not facially vague either.[7]

Accordingly, the plain language of the defined terms in § 2339A(b)(3) and § 2339B(h) provides constitutionally sufficient precision about the scope of the activity prohibited by § 2339B(a)(1) so that anyone of ordinary intelligence, including Sabir as a doctor, would understand that agreeing "to provide medical support to wounded jihadists," under the direction and control of al Qaeda, knowing that al Qaeda has engaged and engages in terrorism or terrorist activity, would be prohibited. The level of detail in § 2339B and its defined terms also precludes the conclusion that the Government will enforce the statute arbitrarily or discriminatorily.

*CONCLUSION*

For the reasons set out above, Sabir's motion to dismiss the Indictment is denied.

SO ORDERED.

overbroad in violation of the First Amendment to the United States Constitution (*see* Sabir Mem. at 1), that argument is rejected for the same reasons that Sabir fails to make a successful facial vagueness challenge. The "analysis of the merits of an overbreadth challenge is essentially the same as the analysis ... in the facial vagueness context." *Farrell*, 449 F.3d at 479. Assuming *arguendo* that Sabir could conjure up some isolated examples where § 2339B would result in the criminalization of protected First Amendment activity, such examples would be insufficient to demonstrate that the statute's overbreadth was substantial, "judged in relation to [its] plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). *See Sattar I*, 272 F.Supp.2d at 361–62 (holding that § 2339B is not overbroad: " § 2339B's prohibitions are content-neutral and its purpose of deterring and punishing the provision of material support or resources to foreign terrorist organizations—a purpose aimed not at speech but at conduct is, of course, legitimate."); *see also United States v. Hammoud*, 381 F.3d 316, 330 (4th Cir.2004) (noting that "it may be true that the material support prohibition of § 2339B encompasses some forms of expression that are entitled to First Amendment

protection" but stating that "[the defendant] has utterly failed to demonstrate, however, that any overbreadth is substantial in relation to the legitimate reach of § 2339B"), *rev'd on other grounds*, 543 U.S. 1097, 125 S.Ct. 1051, 160 L.Ed.2d 997 (2005); *HLP*, 380 F.Supp.2d at 1153 (holding that the definitions of "expert advice or assistance" and "personnel" are not overbroad); *cf. United States v. Awan*, 459 F.Supp.2d 167, 180 (E.D.N.Y. 2006) ("The defendant here has also failed to describe any situation in which even an insubstantial amount of speech may be restrained because of § 2339A(a) and cites no case law in support of which this statute (or § 2339B) has been found overbroad.").

7.  If there was any residual vagueness as to the scope of § 2339B, Congress "ameliorated" any such concern when it amended the statute in December 2004 to incorporate a specific *mens rea* requirement in § 2339B(a)(1). *Hill*, 530 U.S. at 732, 120 S.Ct. 2480; *see also Hoffman Estates*, 455 U.S. at 499, 102 S.Ct. 1186 ("[T]he Supreme Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.").